STATE, EX REL. ROBINSON, PROSECUTING
ATTORNEY *v.* CROW.

4-8126                                                     199 S. W. 2d 323

Opinion delivered February 3, 1947.

68

*Sam Robinson,* for appellant.

*Joe H. Schneider* and *Frankel & Frankel,* for appellee.

McHANEY, Justice. Appellant, as prosecuting attorney for the 6th judicial circuit, brought this action against appellees, who are the State Board of Chiropractic Examiners, to enjoin them from issuing licenses by reciprocity to applicants to practice chiropractic without requiring such applicants to present to them a certificate of ability in the basic sciences issued by the State Board of Examiners in the basic sciences, as, it is contended, is required by the Basic Sciences Act, No. 147 of 1929, §§ 10795 *et seq.,* of Pope's Digest.

The complaint alleged that appellees "have for many months past, and are now, persistently, intentionally, wrongfully and illegally licensing applicants to engage in the chiropractic practice in the State of Arkansas by reciprocity, without first requiring said applicants to obtain and present to said Board a certificate of ability in the basic sciences—issued by the Arkansas State Board of Examiners in the basic sciences, or without requiring said applicants to obtain a waiver of examination from said Board of Basic Science Examiners, all in violation of the provisions of Act 147 of 1929." It also alleged that, unless enjoined, appellees would continue to violate said act in the manner stated. An injunction, both temporary and permanent, was prayed.

To this complaint a general demurrer was interposed and sustained, and, on appellant's declining to plead further, his complaint was dismissed and he has appealed.

In *Stroud* v. *Crow,* 199 Ark. 814, 136 S. W. 2d 1095, we held that the Basic Sciences Act of 1929 applied to persons desiring to engage in chiropractic practice in this State.

A State Board of Chiropractic Examiners was first created by Act No. 126 of 1915, §§ 10771 *et seq.* of Pope's Digest. By Act 485 of 1921, the practice of chiropractic was further regulated, §§ 10776 *et seq.* of the Digest, § 3 of said latter act, § 10778 of the Digest, provides: "The board shall have authority to grant reciprocity with States having equally as high literary professional requirements as provided in this State."

The Basic Sciences Act of 1929, § 10802 of the Digest, has this provision as to reciprocity: "The State Board of Examiners in the Basic Sciences may in its discretion waive the examination required by § 10801 when proof, satisfactory to the Board, is submitted, showing that the applicant has passed an examination in the basic sciences before a board of examiners in the basic sciences or a board authorized to issue licenses to practice the healing art, in another State, when requirements of that State are, in the opinion of the Board, not less than those provided by this act. The provisions of this section shall apply only to examinations conducted by the boards or officers of States that grant like exemption from examination in the basic sciences to persons granted certificates by the Board." A further provision exempts persons then legally entitled to practice the healing art.

Other sections of the Basic Sciences Act, §§ 10804 to 10808 both inclusive, make void any basic science certificate and any license to practice the healing art issued contrary to the provisions of said act and fix heavy penalties for practicing the healing art without a basic science certificate, for fraudulently obtaining or attempting to obtain such a certificate, for any person obtaining or attempting to obtain a license to practice the healing art from any board authorized to issue such license without presenting to such board a valid basic science certificate, and § 10808 provides: "Any person who knowingly issues or participates in the issue of a license to practice the healing art or, any branch thereof in (to) any person who has not presented to the licensing board a valid certificate from the State Board of Examiners in the Basic Sciences, or to any person who has

presented to such licensing board any such certificate obtained by dishonesty or fraud, or any forged or counterfeit certificate, shall be fined not more than five hundred dollars, or imprisoned not more than twelve months, or both, in the discretion of the judge." The enforcement section, 10810, provides: "The State Board of Examiners in the Basic Sciences and the various boards authorized to issue licenses to practice the healing art or any branch thereof shall investigate any supposed violation of this act and report to the proper county attorney all the cases that in the judgment of such board warrant prosecution. Every police officer, sheriff and peace officer shall investigate all supposed violations of this Act and apprehend and arrest all violators thereof. It shall be the duty of the attorney general and of the several county attorneys to prosecute violations of this Act."

So it is manifest that the Basic Sciences Act provides a plain and adequate remedy at law for the enforcement of its provisions without any necessity of applying to a court of equity to restrain a violation of the Act. Assuming without deciding that the State Board of Chiropractic Examiners is in error in licensing by reciprocity applicants from other States to practice chiropractic in this State without first requiring the presentation to it by such applicants of a certificate from the Basic Sciences Board, we think appellant should have pursued the enforcement remedy provided in the Act. Several letters from former Attorneys General and one from the present Attorney General have been appended to appellees' brief to the effect that the Basic Sciences Act has not taken away from the several examining boards for the healing arts the right to grant licenses by reciprocity to applicants from other States. Whether these opinions are correct or not, we express no opinion. If correct, appellees have not violated the Act. If incorrect, then the Act prescribes the method of enforcement by prosecution, and there is no necessity of resorting to the extraordinary remedy by injunction. In *Smith* v. *Hamm,* 207 Ark. 507, 181 S. W. 2d 475, it was held that, to justify a court of equity to enjoin a nuisance,

either public or private, there must be some interference, actual or threatened, to property rights or to civil rights.

It is well settled that equity will not intervene by injunction to restrain acts that are merely criminal, but, as it is said in 28 Am. Jur. 339, Injunctions, § 150, quoted in *Smith* v. *Hamm*, "this does not preclude injunctive relief against the commission of criminal acts which cause irreparable injury to the complainant's property or pecuniary rights, even though the acts complained of are committed by public officers." Here there is no allegation that appellant's property or pecuniary rights are invaded or threatened. It is a simple action to enjoin an alleged violation of the Basic Sciences Act which is made criminal by the Act itself and which prescribes serious penalties by fine and imprisonment for its violation. We do not think the cases of *Melton* v. *Carter*, 204 Ark. 595, 164 S. W. 2d 453, and *Ritholz* v. *Ark. State Board of Optometry*, 206 Ark. 671, 177 S. W. 2d 410, are controlling here.

Being a suit to enjoin the appellee Board from the alleged violation of the criminal provisions of the Basic Sciences Act, we think the trial court was without jurisdiction and correctly sustained the demurrer to the complaint.

Affirmed.

McFADDIN, Justice, not participating.