The Honorable Mark Stodola Prosecuting Attorney Sixth Judicial District 122 South Broadway Little Rock, Arkansas 72201
Dear Mr. Stodola:
This is in response to your request for an opinion on several questions relating to whether and how prostitution may be abated as a nuisance. Your request states:
 A situation exists in the Metro area wherein prostitutes frequent the street corners and parking lots surrounding certain apartment houses or hotels. Law enforcement advises that the owners of these complexes know of this ongoing activity and do nothing about it to the consternation of neighbors, and despite the fact that the illegal activity often takes place in the rooms of the building.
Your questions are set forth and answered below in the order posed. Your first question is:
 May an abatement action legally be brought by the prosecuting attorney based exclusively upon Ark. Code Ann. Sec. 20-27-401? If the answer is "yes," in what court and by what procedure should the prosecutor proceed?
Arkansas Code Annotated § 20-27-401 (Repl. 1991) provides:
 The operation of a house of ill fame, a bawdy house, a disorderly house, or any house for the purpose of assignation or prostitution in this state to which men and women resort for the purpose of prostitution or lewdness is declared to be a public nuisance, detrimental to public morals, and may be abated under the present provisions of law for the suppression of public nuisances.
Because Act 361 of 1941, of which A.C.A. § 20-27-401 is a part, does not expressly authorize a prosecuting attorney, or anyone else, to file an action to abate a public nuisance defined therein, it is my opinion that a prosecuting attorney has no authority, based exclusively on that statute, to file an action to abate such a public nuisance. By the terms of the statute itself, reference must be made to other law (i.e., "the present provisions of law for the suppression of public nuisances") in order to maintain an action to abate a nuisance defined therein. Such other law may, in my opinion, be statutory law or common law. The employment of statutory law is discussed in response to your second question.
Depending upon the extent of a prosecuting attorney's authority at common law, he may have authority to bring an action to abate a public nuisance described in A.C.A. § 20-27-401[1] without reference to any other statute; that is, a prosecutor's common law authority, if any, to seek the abatement of public nuisances may constitute the "present provisions of law for the suppression of public nuisances" mentioned in the statute.
While it is clear that the attorney general possesses common law authority to bring actions in equity on behalf of the state to abate public nuisances, State ex rel. Att'y Gen. v. Karston, 208 Ark. 703,187 S.W.2d 327 (1945), a prosecuting attorney's authority in this regard is less apparent.[2] No case has been located in which the Supreme Court of Arkansas has addressed the common law authority, if any, of prosecuting attorneys to bring such suits. This is not to say, however, that prosecutors have not in fact instituted actions to abate public nuisances in the absence of any express statutory authority to do so. Reported Arkansas cases in which prosecuting attorneys have pursued abatement of alleged public nuisances without their authority being questioned or otherwise mentioned by adverse litigants or the courts include Southeast Arkansas Landfill, Inc. v. State, 313 Ark. 669,858 S.W.2d 665 (1993) (in which a prosecutor's action in chancery to abate a public nuisance was successful and affirmed); Southland Theaters, Inc. v.State, 254 Ark. 639, 495 S.W.2d 148 (1973) (in which it was held that the theater at issue was not a nuisance under A.C.A. § 20-27-401 or a substantially identical statute); State ex rel. Robinson, ProsecutingAtt'y v. Crow, 211 Ark. 67, 199 S.W.2d 323 (1947) (in which a prosecutor's injunctive action was rejected because there was an adequate remedy at law); State ex rel. Hale, Prosecuting Att'y v. Lawson,212 Ark. 233, 205 S.W.2d 204 (1947) (in which the court sustained a prosecutor's action to enjoin dairy farmers from selling milk until they complied with certain government regulations); and Ross, Graham and Loganv. State, 184 Ark. 385, 42 S.W.2d 376 (1931) (in which a prosecutor's action to abate a pool room as a nuisance was rejected because the conduct complained of was criminal but did not touch on civil property rights, public health, or some other ground of equity jurisdiction). The foregoing cases can be interpreted as supporting the proposition that a prosecuting attorney has common law authority to seek the abatement of public nuisances although, as noted above, the opinions give no indication that the prosecutors' authority in those cases was questioned by the litigants or the courts.
To the extent that a prosecuting attorney's lack of common law authority to seek the abatement of a public nuisance might be interpreted as depriving the courts of subject matter jurisdiction of such an action, the courts' failure to note the lack of jurisdiction might be interpreted as additional support for an argument that the prosecutor possesses such authority. Courts are under a duty to determine if subject matter jurisdiction exists, and to raise the matter sua sponte if the litigants fail to do so. Hilburn v. First State Bank of Springdale, 259 Ark. 569,535 S.W.2d 810 (1976); Bratcher v. Bratcher, 36 Ark. App. 206,821 S.W.2d 481 (1991). The Hilburn and Bratcher cases involved the probate courts' lack of jurisdiction to determine disputes over property rights and titles between the personal representatives of estates and third parties, or "strangers to the estates." Hilburn, 259 Ark. at 573;Bratcher, 36 Ark. App. at 209. As probate courts clearly have jurisdiction to determine such disputes between personal representatives and, for examples, heirs, it appears that subject matter jurisdiction, in this instance at least, may depend upon the status or authority of an individual.
City of Little Rock v. Tibbett, 301 Ark. 376, 784 S.W.2d 163 (1990), may also be instructive in this regard. There, the city attorney pursued an appeal of a criminal case in circumstances where, according to the court, only the attorney general had authority to appeal under A.R.Cr.P. Rule 36.10. The court dismissed the appeal, citing a lack of subject matter jurisdiction and noting its duty to raise the issue on its own, but citing no other reason why the appeal was improper. The case appears, therefore, to support the proposition that a court lacks subject matter jurisdiction of an action or appeal that, while otherwise unobjectionable, is brought or pursued by one with no authority to do so, and that the court will raise the issue on its own motion. The application of such a proposition to the nuisance cases cited above, and particularly to the Southeast Arkansas Landfill and Lawson cases (in which the prosecutors' actions ultimately were successful), might, in my opinion, support an argument that the courts' failure to raise their lack of subject matter jurisdiction there, in spite of their professed duty to do so in appropriate cases, indicates that the prosecutors did possess common law authority to bring the actions, there being no express statutory authority.[3]
I have located two other Arkansas cases that may be of some assistance in determining an answer. In Culpepper v. Smith, 302 Ark. 558,792 S.W.2d 293 (1990), the court quoted with approval from Imblerv. Pachtman, 424 U.S. 409 (1976), discussing the common law immunity of prosecutors, and held that a prosecuting attorney's immunity from civil suits for damages "is absolute and is established by precedents of this court and the Supreme Court of the United States of such long standing as to now permit no exception or modification." Culpepper,302 Ark. at 571. This case suggests that the Supreme Court of Arkansas is of the view that at least some of the rights, duties, and other attributes of the office of prosecuting attorney in Arkansas arise under the common law.
In State ex rel. Robinson v. Jones, 194 Ark. 445, 108 S.W.2d 901 (1937), the court held that a prosecuting attorney had authority, apparently arising under the common law, to institute an action in the nature of quowarranto to oust an alleged usurper of a school board seat, notwithstanding that the statute now codified at A.C.A. § 16-118-105
permits a prosecuting attorney to proceed thereunder only against usurpers of county offices. The court held that "[t]he substance of the remedy provided by [A.C.A. § 16-118-105] remains the same as that at common law" and that the statute does not displace the common law proceeding.Robinson, 194 Ark. at 447. In my opinion, implicit in such a holding is the proposition that a prosecuting attorney enjoys authority under the common law to institute proceedings in the nature of quo warranto. It would not appear to be unreasonable to assert that prosecutors likewise have common law authority to institute proceedings for the abatement of public nuisances.
While I am unable to make a conclusive determination of the issue, it is my opinion that it is more likely than not that a prosecuting attorney's asserted common law authority to bring an action to abate a public nuisance would be sustained by the courts of Arkansas.
It appears that, as abatement is an equitable remedy in the nature of an injunction, any such action should be brought in chancery court. SeeSoutheast Arkansas Landfill, 313 Ark. at 671. The petition or complaint would, presumably, allege the existence of a nuisance within the definition contained in the statute and contain allegations of the type one would expect to find in any proceeding seeking an injunction. To the extent common law authority is relied upon, the petition or complaint probably also should allege the inadequacy of the remedy at law.
Your second question is:
 If the answer to [the foregoing question] is "no," may the prosecutor bring such an action utilizing:
a. both 20-27-401 and 16-105-201 et seq., or
b. some other combination of statutes and rules?
Because I conclude above that the answer to your first question is likely "yes," an answer to this question is unnecessary. I would note, however, that it might be successfully argued that A.C.A. § 16-105-205, which expressly authorizes prosecuting attorneys to seek to abate those public nuisances defined in A.C.A. § 16-105-204 ("roadhouses" and the like) and which was in force at the time A.C.A. § 20-27-401 was enacted, is one of the "present provisions of law for the suppression of public nuisances" mentioned in A.C.A. § 20-27-401 and under which houses of prostitution constituting nuisances may therefore be abated. In my view, it would be prudent, in bringing such an action, to assert both common law authority, and statutory authority conferred by the combination of A.C.A. §§20-27-401 and 16-105-205.
With respect to other statutes, it may in particular cases be helpful to examine and possibly proceed under A.C.A. § 5-74-109 (Cum. Supp. 1993 and as amended by Act 1296 of 1995), which expressly authorizes prosecuting attorneys to seek the abatement of any premises "used to facilitate the commission of a continuing series of three (3) or more criminal violations of Arkansas law. . . ." A.C.A. § 5-74-109(b).
Your third question is:
 If the answer to [part (a) of the second question] is yes, does it matter that 16-105-201 does not mention prostitution as one of the nuisances that may be abated using its procedures since the statutes are to be strictly construed, or does the reference to "present provisions of law" in 20-27-401 resolve that issue?
Because an answer to part (a) of your second question was unnecessary, an answer to your third question is also unnecessary. Because, however, I believe it would be prudent to rely upon both common law and statutory authority, I will comment on the issue raised.
The Supreme Court of Arkansas has held that statutes providing for the abatement of nuisances must be strictly construed. Southland Theaters,254 Ark. 639; Southland Theaters, Inc. v. State, 254 Ark. 192,492 S.W.2d 421 (1973); Mini-Art Operating Co. v. State, 253 Ark. 364,486 S.W.2d 8 (1972). In each of these cases, however, the court's statement was made in the context of a discussion of whether the establishment sought to be closed could fairly be characterized as a nuisance within the definition set forth in the statute. Thus, in each case, the court held that a motion picture theater could not fairly be characterized as a roadhouse or nudist camp, which are the nuisances defined in and prohibited by the statute under which the state proceeded in those cases. It seems obvious that similar reasoning would be employed by the courts in the event abatement of a house of prostitution was attempted on the sole ground that it constitutes a roadhouse or nudist camp under A.C.A. § 16-105-204.
In my opinion, however, the rule of strict construction should not be used to render meaningless the phrase "present provisions of law for the suppression of public nuisances" contained in A.C.A. § 20-27-401. The courts will not assume that statutory language serves no purpose.Phillips Petroleum Co. v. Heath, 254 Ark. 847, 497 S.W.2d 30 (1973). The quoted phrase must, therefore, refer either to "provisions" of common law available for the abatement of nuisances, or to statutes such as A.C.A. § 16-105-205, providing procedures for the abatement of nuisances, or to both, and, in my opinion, it is likely that the courts would so hold.
Your fourth question is:
 If the answer to [part (a) of the second question] is yes, are the procedures found in 16-105-201 et seq. the exclusive ones, or do the rules of civil procedure impact such an action?
Because an answer to part (a) of your second question was unnecessary, an answer to your fourth question is also unnecessary. Because, however, I believe it would be prudent to proceed relying upon both common law and statutory authority, I will comment on the issue raised.
Arkansas Code Annotated § 16-105-208(a) provides in part:
 Proceedings under this subchapter, whether in the chancery or circuit courts, shall be conducted in accordance with the procedure of the courts of chancery where not otherwise expressly provided in this subchapter.
Arkansas Rule of Civil Procedure 81(a) provides:
 Applicability in General. These rules shall apply to all civil proceedings cognizable in the circuit, chancery, and probate courts of this State except in those instances where a statute which creates a right, remedy or proceeding specifically provides a different procedure in which event the procedure so specified shall apply.
In my opinion, in an action to abate a public nuisance defined in A.C.A. § 20-27-401, employing A.C.A. § 16-105-205 as a "present provision of law" as referred to in A.C.A. § 20-27-401, both the procedures set forth in A.C.A. §§ 16-105-201 to -211 and the Arkansas Rules of Civil Procedure will apply, with the statutory provisions taking precedence in cases of conflict between the two.
Your fifth question is:
 If the answer to [parts (a) and (b) of the second question] is no, can the prosecutor proceed in any fashion with such an action?
Because an answer to your second question was unnecessary, and because there appear to be several options available to prosecuting attorneys, an answer to your fifth question is also unnecessary.
Your sixth question is:
 Regardless of whether a prosecutor may bring such an action, is there any legal reason why a municipality could not pursue such an abatement action pursuant to Ark. Code Sec. Ann. 14-54-103. If they can, in what court and by what procedure should the city proceed to enjoin the prostitution activity?
Arkansas Code Annotated § 14-54-103 provides in part:
Cities and incorporated towns shall have power to:
 (1) Prevent injury or annoyance within the limits of the municipal corporation from anything dangerous, offensive, or unhealthy and cause any nuisance to be abated within the jurisdiction given the board of health in § 14-262-102. . . .
Arkansas Code Annotated § 14-262-102(c) provides in part:
 The city council shall have power to invest the board [of health] with such powers and impose upon it such duties as shall be necessary to secure the city and its inhabitants from the evils of contagious, malignant, and infectious diseases. . . .
These statutes have been interpreted to permit a city to abate public nuisances, or to delegate to the board of health the power to abate public nuisances. Waters v. Townsend, 65 Ark. 613, 47 S.W. 1054 (1898);Gaines v. Waters, 64 Ark. 609, 44 S.W. 353 (1898). The power given by these statutes is the power to abate public nuisances directly by executive action, without resort to the courts. See Waters,65 Ark. at 616, and Gaines, 64 Ark. at 612. The power is limited by the terms of the statutes:
 The nuisance must be one the abatement of which tends to protect the city and the inhabitants thereof from the evils of contagious, malignant and infectious diseases. The council could not confer upon the board power to abate a nuisance which tended only to injure property rights or the morals of the inhabitants of the city; it must be one affecting the public health.
Waters, 65 Ark. at 616.
There presumably would be a question of fact in each instance whether a particular house of prostitution affects the public health, or only the public morals.
Cities of the first and second classes are, however, given the power under A.C.A. §§ 14-54-104(3)(D) and 14-54-105(3)(D) to "prevent, abate, or remove nuisances of every kind, and to declare what are nuisances, and also to punish the authors or continuers thereof by fine or imprisonment, or both" under the procedures set forth therein. In addition, it appears that municipalities have common law authority to institute suits in equity for the abatement of public nuisances. FortSmith v. Western Hide Fur Co., 153 Ark. 99, 239 S.W. 724 (1922); Lonokev. Chicago, R.I.P. Ry. Co., 92 Ark. 546, 123 S.W. 395 (1909).
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General J. Madison Barker.
Sincerely,
WINSTON BRYANT Attorney General
WB:JMB/cyh
[1] The question of whether an apartment house or hotel such as the ones described in your request would constitute a public nuisance under A.C.A. § 20-27-401 or other law will, of course, depend upon the facts of each particular case. It is not at all clear that a nuisance would invariably be held to exist merely because the owner of a structure is aware of, but takes no action with respect to, illegal activity that occurs outside and often, but not always, inside, the structure, or that the owner of the structure would be held to be "operating" the enterprise within the meaning of A.C.A. § 20-27-401. Because your questions are directed solely to practice and procedure in litigation seeking the abatement of nuisances, however, I express no opinion as to whether an apartment house or hotel such as the ones described in your request constitutes a public nuisance or, if so, whether the owner of the structure is "operating" the nuisance.
[2] A prosecutor does, of course, have statutory authority to bring suit for the abatement of certain public nuisances. See, e.g., A.C.A. §§2-16-508(a), 5-64-804(a) (Repl. 1993), 5-69-102(d) (Repl. 1993),5-74-109(c) (as amended by Act 1296 of 1995), 16-105-205, 16-105-304, and 15-105-403 (Cum. Supp. 1993), and § 14, Act 814 of 1995. Such authority does not, however, expressly extend to public nuisances that are houses of prostitution.
[3] Such an argument's usefulness appears, however, to be limited. Courts have refused to be bound by issues not raised by the litigants and therefore passed upon sub silentio. See Brown Shoe Co. v. United States,370 U.S. 294, 307, 362-363; see also Leonards v. E.A. Martin MachineryCo., 321 Ark. 239, 245, ___ S.W.2d ___ (1995).